L. W. Seabrook v. Commissioner.
L. W. Seabrook v. Commissioner
Docket No. 9927.
United States Tax Court
1951 Tax Ct. Memo LEXIS 361; 10 T.C.M. (CCH) 53; T.C.M. (RIA) 51026; January 12, 1951
*361 On the facts, held, that petitioner and his two children did not intend to join together in the present conduct of the hardware business either on July 1, 1942, when the partnership was formed, or at any other time during the fiscal years ended June 30, 1943 and 1944, and therefore the partnership was invalid for tax purposes during these two years. Carl F. Bauersfeld, Esq., Robert Ash, Esq., Munsey Bldg., Washington 4, D.C., Charles S. Ausley, Esq., and James D. A. Holley, C.P.A., Tampa Theatre Bldg., Tampa, Fla., for the petitioner. F. L. Van Haaften, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion We entered a decision in the above entitled case on the 15th day of December 1947 on the basis of our Memorandum Findings of Fact and Opinion, entered December 12, 1947 [. The decision was for respondent. That decision was reviewed by the United States Court of Appeals for the Fifth Circuit. That Court handed down its opinion on August 2, 1949, , reversing and remanding our decision "for further proceedings in conformity with the opinion of the Supreme Court in *362 with the right in either of the parties to offer such additional evidence as would be appropriate in the light of the Supreme Court's decision in the Culbertson case." In compliance with the opinion and mandate of the Circuit Court, a further hearing was had in Jacksonville, Florida, on February 2, 1950. At this hearing additional evidence was submitted by both parties bearing on the question whether petitioner and his two children really and truly intended to join together in the present conduct of the business of Seabrook Hardware Company during the fiscal years ended June 30, 1943 and 1944. No other issue is before us. Findings of Fact Petitioner is an individual residing in Tallahassee, Florida. He has two children, a son, William Whitmarsh Seabrook, born July 8, 1920, and a daughter, Inez Seabrook Davenport, born July 19, 1918. Petitioner has been in the hardware business since 1919. From 1927 until July 1, 1942, petitioner conducted this business as sole proprietor under the name of Seabrook Hardware Company. Not only did this company operate a retail hardware store, but it also handled building supplies and was a distributor of trucks, tractors and electrical machinery. *363 It maintained a repair shop to service the machines it sold. During these years petitioner was in sold control of the business, though he relied upon the assistance of his general manager and office supervisor, C. E. Patterson, for the performance of many of the company's operations. From the fiscal year ended June 30, 1938, through the fiscal year ended June 30, 1942, the net income of the company which was reported by petitioner as part of his taxable income, petitioner's net income and his income tax liability were as follows: Income
Year ended
from
Total Net
Tax
June 30
Company
Income
Liability
1938
$ 7,806.33
$ 7,806.33
$ 220.50
1939
11,336.29
11,592.57
557.25
1940
16,286.02
17,185.09
1,141.06
1941
16,176.84
16,575.80
1,518.14
1942
24,287.26
25,198.34
6,807.04
Whitmarsh Seabrook worked in the hardware store from the time he was a small child. While he was getting an education, he worked at the store after school, on weekends and during vacations. He waited on customers and helped to inventory the stock. He became familiar with all facets of the business and displayed a real aptitude for it. After attending local schools in *364 Tallahassee, Whitmarsh attended The Citadel, a military college, in Charleston, South Carolina. He majored in civil engineering because both he and his father thought it would be helpful to him in the hardware business. Petitioner had found that in the sale of building materials and equipment purchasers frequently requested estimates of the kind, quality and strength of such material and equipment. Petitioner's son graduated from The Citadel (Charleston, South Carolina) on May 30, 1942, and was married the same day. After a four or five-day honeymoon Whitmarsh and his bride returned to Tallahassee. During the ensuing five weeks he worked in his father's business, though the exact nature of his services was not disclosed by the evidence. During June and July 1942 Whitmarsh expected any day to receive both his commission in the Army, to which he was entitled on graduation from The Citadel, and assignment to active duty. Petitioner's daughter, Inez, attended local schools in Tallahassee and graduated from Florida State College for Women in 1938. During school and college she frequently helped at her father's store in her spare time. She did mostly office work, such as getting out bills, *365 posting book entries, and preparing payrolls and balance sheets. She also made suggestions concerning household items sold by the store which were of interest to women. In the fall of 1938 she attended the New York University School of Retailing in New York City on a scholarship. The course combined class work with practical experience in a department store. Inez attended this school until December 1938, when she returned to Tallahassee, because it was felt the course was not of great value to her. On returning home she took a typing course at Lively Vocational School a few hours each day and the remainder of her time she did office work in the store. She was paid a salary for this work. She ceased to work regularly at the store after April 1939. Inez married James Davenport in December 1940. Her husband had both a degree from the Georgia School of Technology in electrical engineering, and also practical experience in that field which made him a desirable prospect in his father-in-law's business. In February 1941 Davenport entered the military service and was assigned to Camp Stewart, Georgia, where Inez joined him. He went overseas in February 1942 and after his departure Inez returned *366 to her parent's home. In July 1942 she was expecting a child. The balance sheet of the company as of June 30, 1942, showed current assets of $126,066.02, current liabilities of $50,270.12, fixed assets of $30,690.83, fixed liabilities of $9,684.40, or total assets of $156,756.85, as against a total liability of $59,954.52, indicating a total net worth of $96,802.33. By written instrument dated July 1, 1942, petitioner, as vendor, in consideration of love and affection and $1 "sold" his son a one-fourth interest in the company valued at $20,000, which interest was described as: "All goods, wares, stock, merchandise, hardware, iron and steel products, tractors, trucks, grading implements, and all farm implements, all accounts receivable of the said Vendor under the trade name of Seabrook Hardware Company, the store property where Seabrook Hardware Company is now located and the railroad warehouse property." The bill of sale also provided that the business "shall be carried on as a partnership between the vendor and his son, the vendee, under the trade name of Seabrook Hardware Company." By an essentially similar instrument petitioner also "sold" his daughter a one-fourth interest *367 in the company's business valued at $24,000. The discrepancy in the value of these two interests is unexplained. Prior to July 1, 1942, Inez and Whitmarsh had no assets of their own. On March 15, 1943, petitioner filed a gift tax return for the calendar year 1942 which disclosed the following: Claimed value of one-fourth inter-
est in Seabrook Hardware Com-
pany to W. W. Seabrook
$24,000.00
Claimed value of one-fourth inter-
est in Seabrook Hardware Com-
pany to Inez Seabrook Davenport
24,000.00
Total value claimed gifts
$48,000.00
Loss: Two exclusions $4,000
each donee
$ 8,000.00
Specific exemption
claimed
40,000.00
48,000.00
Taxable gifts
None
Petitioner had led his children to believe from their early youth that when they had completed their education and attained their majority, he would take them into the business with him as partners and give them an interest therein, provided they worked hard, learned the business and desired such a partnership. Due to this promise to his children petitioner on several occasions rejected offers of his employees to buy an interest in the business. By these bills of sale petitioner, his son and *368 daughter formed a partnership in the business of Seabrook Hardware Company on July 1, 1942. Petitioner considered July 1, 1942, as an appropriate time to give each of his children an interest in the business for several reasons. Whitmarsh had recently graduated from college and married. Inez had completed her education, was married and was to have a child. Moreover, the primary purpose of petitioner in forming the partnership at this time arose from the fact his son was expecting any day to receive his commission and report for active duty in the Army, while Inez' husband had already gone overseas. Petitioner wanted his son and his son's wife to know that he, the son, would have something to come back to after the war. Similarly petitioner wanted his daughter to know that Davenport would, through her interest in the business, also have something to come back to after the war. It was for these reasons that petitioner timed the instruments as he did. A partnership agreement was not executed at this time because the partners did not think it was necessary. Shortly after July 1, 1942, the books of Seabrook Hardware Company were altered to conform to the partnership arrangement. Capital *369 accounts were set up on the books in the names of petitioner, his son and daughter. The principal creditors of the company, its bank, its insurance company and its key employees were notified of the partnership at this time. The bills of sale in July 1942 were subsequently followed by the execution of a written instrument designated as a "partnership agreement", dated August 3, 1943. The Seabrooks learned that a more formal instrument was customary in the formation of a partnership, but the absence of Whitmarsh from home and the sickness of Inez during this period delayed the execution of this partnership agreement. The agreement recited that petitioner had transferred a one-fourth interest in the business to each child on July 1, 1942, that the business had been operated as a partnership thereafter, and that all the parties were desirous of formulating formal articles of partnership as of July 1, 1942, in the name of Seabrook Hardware Company. The agreement stated that the capital of the partnership was to be owned 50 per cent by petitioner and 25 per cent each by Inez and Whitmarsh. Net profits and losses were to be shared on the same percentage basis. Net profits were to be distributed *370 each year except for such amounts as the partners mutually agreed to set aside for investment and except for such amounts as the partners elected to leave as credits to their capital accounts. The capital of the partnership was stated to be $96,000, contributed as follows: $48,000 by petitioner and $48,000 equally by the two children. The agreement authorized the three designated partners to draw checks in the firm's name. Petitioner was understood and agreed to be general manager of the business. The firm was to continue until dissolved. Whitmarsh signed the agreement at Fort Belvoir, Virgina, while Inez signed at Tallahassee with her father. During the two weeks Whitmarsh worked at the store following the execution of the bills of sale on July 1, 1942, he frequently discussed various vital business problems created by the war with his father. He also announced his partnership status to various key employees and signed company checks. On July 13, 1942, Whitmarsh received his commission in the Army and he went on active duty the following day, reporting to Fort Belvoir. In anticipation of shipment overseas and in compliance with a routine Army recommendation, Whitmarsh executed a *371 power of attorney on August 14, 1942, authorizing his father to act for him. He went overseas in January 1943 with a construction battalion and participated in the North African and Italian campaigns. He was overseas for 20 months before he returned to this country and release from military service did not come until November 1945. During the fiscal years ended June 30, 1943, and June 30, 1944, Whitmarsh performed no services whatsoever in the hardware business after July 13, 1942. He did on occasion correspond with his father concerning the business throughout his service career. On his return to civilian life in 1945 Whitmarsh immediately went to work on a full-time basis at Seabrook Hardware Company as buyer and floor manager. Inez gave birth to a daughter in October 1942 and was predominantly occupied with the duties of mother and housekeeper during the fiscal years at issue. She did help her father at the store occasionally when business was particularly rushed and extra help was needed. Occasionally Inez made cursory visits to the store, at which time she noted the merchandise on display and discussed business matters with the office personnel. Her husband was released from *372 the Army in July 1945 and started to work for Seabrook Hardware Company in order to look after his wife's interest in the business. He took over the management of the warehouse, repair shop and the machinery and equipment side of the business. From July 1, 1942, through June 30, 1944, the business of Seabrook Hardware Company was operated by petitioner in the same manner as prior to this period when it was a sole proprietorship. Petitioner continued to exercise complete control over the store with the assistance of his general manager, Patterson. It is true that during these years he discussed business matters of vital significance with his daughter and with his son before the latter went overseas. Among the problems discussed were whether the wholesale hardware business should be expanded, whether the machinery business should be separated from the hardware business, whether to build a plant for the machinery business, the personnel shortage and priority difficulties. On one occasion after he entered the service and before he went overseas Whitmarsh returned to Tallahassee. At that time he discussed machinery contracts with his father. On another occasion after July 14, 1942, petitioner *373 met his son in New York to discuss whether the business should be sold. Running the business alone during wartime with all its complications such as shortages of material and personnel seemed just too much of a task for petitioner and he was willing to give up such arduous work. Whitmarsh, however, refused, as had his sister, to give up his interest in the business and urged his father to stick it out and do the best he could. The following schedule shows the income credited to the respective accounts of petitioner and the two children as well as their withdrawals for the years indicated: Fiscal Year Ended June 30, 1943
Income
With-
Credited
drawals
L. W. Seabrook
$57,968.29
$46,129.71
W. Whitmarsh Seabrook
28,984.14
2,076.13
Inez Seabrook
Davenport
28,984.15
974.39
Fiscal Year Ended June 30, 1944
L. W. Seabrook
$38,722.42
$46,610.80
W. Whitmarsh Seabrook
19,361.22
6,832.10 *
Inez Seabrook
Davenport
19,361.22
11,719.62 **
*374 Subsequent to July 1, 1942, Whitmarsh and Inez drew checks on the partnership funds both for expenses of the business and for their personal use. When taxes or other obligations of one of the partners came due, the company wrote checks to cover them and charged the amounts to the partner's account. For the fiscal year ended June 30, 1943, the partnership filed a partnership return reporting ordinary net income in the amount of $115,936.58. The distributive shares of this income were stated to be $57,968.29 to petitioner, $28,984.14 to Whitmarsh, and $28,984.15 to Inez. These amounts were reported by these individuals in their returns. For the fiscal year ended June 30, 1944, the partnership reported ordinary net income in the amount of $77,632.89. The distributive shares of this income were stated to be $38,816.45 to petitioner and $19,408.22 to each of the two children. These amounts were reported by these individuals on their returns. In his notice of deficiency respondent increased petitioner's income for the fiscal years ended June 30, 1943 and 1944, by the amounts reported by petitioner's children from the partnership business in those years. In explanation of his determination, *375 respondent stated: "It is held that the entire net income of the business conducted by you under the name of Seabrook Hardware Company is taxable to you." Petitioner and his two children did not intend, either on July 1, 1942, or any other time during the fiscal years ended June 30, 1943 and 1944, to join together in the present conduct of the business of Seabrook Hardware Company. Whitmarsh Seabrook and Inez Seabrook Davenport were not valid partners, for income tax purposes, in the business of Seabrook Hardware Company during these two years. Opinion HILL, Judge: The sold question for determination in this case is whether a partnership, valid for tax purposes, existed between petitioner and his two children, Whitmarsh and Inez, in the fiscal years ended June 30, 1943 and 1944. Whether such a partnership did exist depends on the intent of the parties regarding the present conduct of the business of Seabrook Hardware Company during these two years. To find their intent we have considered all the evidence surrounding the formation of the partnership on July 1, 1942, the partnership instruments themselves, the conduct of the parties and the operation of the business subsequent *376 to the formation of the partnership in the light of the now familiar principles set forth in . It is our conclusion that petitioner and his son and daughter did not intend to join together in the present conduct of the hardware business either on July 1, 1942, when the partnership was formed, or at any subsequent time during the taxable years in question. The personal circumstances of both Inez and Whitmarsh on July 1, 1942, make it plain that neither they nor their father could expect that they would be able to contribute services or capital to the business of Seabrook Hardware Company or participate in its management in the near future. At that time the son and daughter owned no capital originating with themselves which they could have added to the assets of the business, and the possibility of acquiring funds above and beyond what was needed to meet their own wants was remote. Whitmarsh had graduated from a military college the month before and his departure for active duty in the armed forces for the duration of the war was imminent. Inez was expecting a child in a few months which would confine her activities to the family *377 hearth for an indefinite period. Petitioner's statements setting forth the primary reason for forming the long-promised family partnership on this particular date also support the conclusion that it was not created for the purpose of obtaining the services and capital of the children in the conduct of the business. Rather these statements show that petitioner actually did not expect that his children would be in a position to make any vital contribution towards producing the income of Seabrook Hardware Company in the near future. When asked at the first hearing when he took his children into the business, petitioner stated: "Well, about the time they were fixing to get into the Army, through with school, fixing to - looked like they were going to have to go to war, and I thought that was about the best time to take them into the business. There was trying times about that time. I was trying to do everything I could to get things fixed up before they did get away. * * *
"I told them that I was going to give them a fourth interest in the business. I wanted them to feel like it was theirs; when they came back, they would come into the business and run it." This language makes *378 it obvious that petitioner chose July 1, 1942, to form the partnership to assure his son and son-in-law of a future with Seabrook Hardware Company on their return from the war. Further support for our conclusion lies in the terms of the partnership agreement which provided that petitioner was to be general manager of the business. Thus in view of the personal circumstances of the children at the time the partnership was formed, the reasons given by petitioner for creating the partnership at that time and the partnership agreement itself, we are convinced that no business purpose, but only family consideration lay behind this step. It is true both Whitmarsh and Inez had the educational background and experience to make valuable additions to the hardware business at some future time, but taking them into the business before they were available to perform such services can only be justified on personal grounds. Events subsequent to July 1, 1942, demonstrates that the children in actuality did not contribute to the partnership's income or participate in its business affairs to any significant extent during the two fiscal years in question. It is clear they contributed no original capital *379 to the enterprise at any time and petitioner does not claim otherwise. It is equally self-evident that Inez and Whitmarsh were not able to proffer vital services or take a hand in the management of the partnership. During the entire two-year period Whitmarsh was able to work at the store for only two weeks, and we must draw the normal inference concerning the value of these services from the fact that the nature of them is not disclosed outside of the signing of checks. The fact that Whitmarsh intended to provide the partnership with his services at the conclusion of his Army service is not a valid substitute for contributing his efforts to the attainment of partnership income during the tax years under consideration. As was noted by the Supreme Court in the Culbertson case, supra, the vagaries of human experience do not permit us to use a good faith intent as to future conduct to form the basis for the present taxation of income. Petitioner bases his claim that Whitmarsh participated in the management of Seabrook Hardware Company on the fact his son discussed business problems with him during the first two weeks of July 1942 and on two other occasions prior to going overseas, and *380 also corresponded with him about partnership affairs. We are not persuaded under the circumstances that such discussion and correspondence between two members of a family concerning a family business is sufficient in itself to constitute active sharing in the management of the business. Rather we think that petitioner was trying to keep his son abreast of vital business matters as a future participant therein and was not relying on his son to shoulder a part of the managerial responsibility for the present conduct of the business. This is especially true in view of the fact Whitmarsh was either in training to go overseas or in combat operations overseas the entire taxable period after July 14, 1942. We are convinced that the vital decisions in running the business still were squarely on the shoulders of petitioner and that his son was no more than an interested by-stander until after the war. It is clear that Inez neither contributed substantially to the control and management of the business nor rendered it vital services during the taxable years. She was married, and expecting a baby on July 1, 1942. As a matter of fact she was troubled by illness prior to the birth of a daughter *381 in October 1942. Thereafter she was predominantly occupied with raising the child and with household tasks. By her own admission she only worked at the store on a few occasions when the office force was overloaded. Her chief claim to participation in the management of the business is based on the fact that she discussed vital questions concerning its operations with her father. But again we note that it is normal in any household to discuss the business problems of its members. There is nothing in the evidence concerning these discussions to make us feel that Inez effectively contributed thereby to the control of company affairs. We have largely discounted the self-serving statements of petitioner and Inez at the second hearing that she was in the store almost every day checking the merchandise on display and overseeing the handling of office affairs. We prefer to rely on petitioner's statements against interest at the first hearing regarding her participation in business affairs. When asked if Inez worked in the business during the taxable years, petitioner stated: "A. She worked some; sometimes we got in a tight [spot], she'd come in there and help us, maybe, but her hands were *382 full with other things. * * * "Q. So that she was busy with the family, rather than working in the business during those two years? "A. Yes, sir." The best proof that petitioner's children did not play an effective role in the management of Seabrook Hardware Company during the taxable years is petitioner's own frank admission that there was no material change in the management of the store subsequent to the formation of the partnership, but that his supervision over the business remained the same as in prior years when the company was a sole proprietorship. His desire to sell the hardware business because the pressure of operating it alone during the war years was too much for him is a further indication that his children were of no effective aid in operating the store in the war years. Under these circumstances it is evident that the income of Seabrook Hardware Company in the fiscal years July 1, 1942-June 30, 1944, was earned by the capital, services and management skill of petitioner alone, and under familiar principles of income tax law such income consequently must be taxed to him. Two of the cases upon which petitioner placed reliance, , *383 and , are readily distinguishable on the facts. This is not an instance where a taxpayer's children have achieved bona fide partnership status prior to the taxable years by their contributions to the business and then have been prevented from further participation in partnership affairs by entry in the armed services or by retiring temporarily for the purpose of raising a family. While Whitmarsh and Inez were raised in the business, their services in the store were secondary to attaining an education in the years up to July 1, 1942. Whitmarsh did not complete his education until May 30, 1942. Inez was married in December 1940 and stayed with her husband in Camp Stewart, Georgia, until February 1942. She never worked regularly in the hardware business after April 1939. Furthermore, there was never any intent, express or implied, on the part of petitioner and children that they operate the business as partners prior to July 1, 1942. We therefore uphold respondent's determination that Whitmarsh and Inez were not valid partners in the business of Seabrook Hardware Company in the fiscal years ended June 30, 1943 and 1944. Decision will be entered *384 for respondent. Footnotes
*. Of the withdrawals $6,142.98 was for the purchase of United States bonds subsequently used for payment of Federal income taxes. ↩
**. Of the withdrawals $11,491.24 was for the payment of Federal income taxes.↩